IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DORINA ONOFREI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 04 C 5560 |
| v. | ) |
| | ) Judge Robert W. Gettleman |
| GENERAL SECURITY SERVICES | ) |
| CORPORATION (a Minnesota Corporation) | ) |
| and INDEPENDENT SECURITY AND | ) |
| POLICE UNION, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Dorina Onofrei, was employed by defendant General Security Services Corporation ("GSSC") as a security guard from September 2001 until her termination on October 31, 2003. Plaintiff has filed a five-count complaint against GSSC and defendant Independent Security and Police Union ("ISP")[1], which is the certified collective bargaining representative of the bargaining unit consisting of GSSC's security guards, including plaintiff. Plaintiff alleges sex and race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§2000e et seq., retaliatory discharge in violation of Title VII and Illinois public policy, and violations of § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). On January 24, 2005, this court granted GSSC's motion to dismiss Count V, the LMRA claim.

GSSC has filed a motion for summary judgment on Counts I through IV under Fed. R.

---

[1] The court notes that no return of service was filed for ISP, and ISP has not filed an appearance.

Civ. P. 56, arguing that plaintiff has failed to establish a prima facie case of discrimination and has failed to rebut defendant's asserted non-discriminatory reason for terminating plaintiff's employment, and that plaintiff has failed to show that she engaged in protected activity under Title VII. For the reasons stated below, the court grants summary judgment on the Title VII claims and declines to exercise supplemental jurisdiction over the Illinois retaliatory discharge claim.

## STATEMENT OF FACTS[2]

Defendant GSSC provides security personnel for federal buildings in the Chicago metropolitan area pursuant to contracts with the Department of Homeland Security ("DHS") and the Federal Protection Service ("FPS"). Under the "Loop Contact," GSSC provides security personnel for four federal buildings in Chicago located at 77 West Jackson, 211 South Clark, 219 South Dearborn, and 230 South Dearborn. Defendant the ISP is the certified collective bargaining representative of the bargaining unit consisting of GSSC's security guards, including plaintiff. Guy D'or ("D'or"), a Caucasian male, was the contract manager for the Loop Contract. Robert Doble ("Doble"), a Hispanic male, was the GSSC captain and reported to D'or. John Bier ("Bier") was a DHS/FPS contract inspector who monitored GSSC's compliance with the Loop Contract. Plaintiff Dorina Onofrei, a Caucasian woman, was employed as an armed security guard under the Loop Contract from her hire in September 2002 until her termination on December 31, 2003.

Plaintiff was late to work at least six times between November 2002 and April 2003,

---

[2]Unless otherwise noted, the following facts, taken from the parties' L.R. 56.1 statements and attached exhibits, are not in dispute.

sometimes by more than an hour, and received counseling from supervisors and four written warnings as a result. Plaintiff protested her written warning for being tardy on February 21, 2003, but admitted at her deposition that she was late on that date. Plaintiff testified that Doble stated that he would "take care of [the warning]," which she understood to mean that he would "tear it up." Plaintiff also testified that she had never seen the written warning for arriving to work two hours late on April 29, 2003.

D'or received a guard contract inspection report regarding plaintiff dated April 16, 2003 (the "Report"), stating that the property manager for 230 South Dearborn, Jeff Mornar ("Mornar"), had complained that plaintiff was violating company policy by allowing trucks into the dock area without notifying the federal agencies receiving the trucks, as required. The Report requested that plaintiff be removed from the dock area and prohibited from working certain posts. The box at the bottom of the Report titled "signature of inspector" contains the typed name of FPS inspector Traci R. Hicks ("Hicks") but no signature. The box titled "signature of contractor's rep." contains a signature, dated June 23, 2003. In response to the Report, D'or instructed Doble, who was responsible for scheduling the Loop Contract guards, not to schedule plaintiff for the 230 South Dearborn dock posts. Doble told plaintiff about Mornar's complaint. GSSC asserts that plaintiff was not scheduled for these posts for several months. Plaintiff testified that she worked on the dock after April 16, 2003, but could not recall any specific dates and failed to produce any documentation in support of this claim.

On the afternoon of May 21, 2003, D'or received an e-mail from Bier stating that the doors to 230 South Dearborn were to remain locked until 6:30 a.m. and that no one was allowed into the building before that time unless they had a key-card with which to open the doors.

3

Previously, the doors were unlocked at 6:00 a.m. D'or informed Doble of the change. Plaintiff was assigned to the midnight to 8 a.m. shift at 230 South Dearborn. At approximately 5:30 a.m. on May 22, 2003, Doble called plaintiff at her post and gave her a direct order not to unlock the doors until 6:30 a.m. and that no one without a key-card was permitted to enter the building.

At about 6 a.m. people were gathered outside the building. Plaintiff testified that the people outside were angry and were banging on the windows, screaming, cursing plaintiff and calling her names. Plaintiff "lost it" and started crying. Plaintiff testified that she called the on-duty sergeant, Sergeant Pruitt ("Pruitt"), and that he told her to let people into the lobby to talk to him on the telephone. Plaintiff opened the handicap door to allow 10 or 12 people into the lobby. Doble arrived at 230 South Dearborn at approximately 6:00 a.m., accompanied by the regional director of General Services Administration for DHS, and saw people in the lobby. Doble asked plaintiff why she had let the people in, and plaintiff responded that she let some of them in because they wanted to talk to Pruitt and let the rest in because they were cold.

Bier initially wanted GSSC to take plaintiff off the Loop Contract based on the May 22, 2003, incident. He subsequently reconsidered and wrote D'or a letter stating that GSSC must take "appropriate action" against plaintiff. D'or suspended plaintiff for three days for not following Doble's order. Plaintiff filed a grievance with the ISP regarding her suspension, which was denied. The ISP's response states, "In your grievance you admit the instructions were given to you prior to the incident. This being the case, your grievance has no merit." Plaintiff also filed an unfair labor practice charge with the National Labor Relations Board ("NLRB") regarding her suspension. The NLRB dismissed her charge.

On October 12, 2003, plaintiff was assigned to guard 77 West Jackson from midnight to 8

4

a.m. Plaintiff was the only guard on this shift. At approximately 1:30 a.m., plaintiff observed on one of the security monitors that a man had entered the building through a side door and was waiting for an elevator. Plaintiff testified that she was 98 percent sure that the intruder was Bryan Carey ("Carey"), a lieutenant assigned to the another GSSC contract with the federal government, but that the "camera was fuzzy and sometimes[s] didn't show the complete picture." Plaintiff testified that she knew that Carey had no reason to be in the building, and that she thought he was coming to see what she was doing at her post or to "catch [her] doing something." No guard is allowed into any federal building during closed hours when the guard is not on duty. The man was not wearing a GSSC uniform and did not enter through the front door or come to the security post to check in, which would have been proper procedure for a GSSC employee entering the building. The man entered through a side door opened by a key that no one except the guard on duty, plaintiff in this case, was authorized to have.

The intruder went to the third floor, which contains offices for the Social Security Administration and restrooms. Plaintiff lost video contact with the intruder for approximately ten or fifteen minutes and does not know what he was doing during that time period. Plaintiff regained video contact and observed the intruder leave the building through a back door with a bag that he had not been carrying when he entered the building. Plaintiff testified that she knew that she was supposed to contact the government's Mega Control Center ("Mega Center") when she saw a suspicious person enter a building, but that she never contacted the Mega Center on October 12, 2003, because she believed the person was Carey. More than ten minutes after plaintiff observed the man enter the building she contacted the GSSC sergeant on duty, Sergeant Moss ("Moss"), and told him that Carey had entered the building. Plaintiff testified that she

5

called Moss while the intruder was in the building and was still on the phone with Moss when she saw him leave. The written report she prepared on the date of the incident, however, suggests that she called Moss after the man exited the building. Plaintiff never physically confronted the man.

DHS/FPS began an investigation of the October 12, 2003, incident, which included reviewing the security tapes. Doble and D'or concluded from the investigation that Carey had not been in the building, but that another GSSC employee was the intruder. On October 16, 2003, D'or received a letter from DHS/FPS requesting the GSSC take "appropriate action" against plaintiff. Plaintiff was suspended effective October 17, 2003, for failing to properly challenge the intruder, for incorrectly identifying him, for failing to call the Mega Center, and for delaying calling her supervisor until after or shortly before the intruder left the building.

On October 21, 2003, at plaintiff's request, she met with D'or, Doble, and Jim Martin, vice president of the ISP, to discuss her suspension and her grievance of that suspension. DHS/FPS's investigation ultimately led to the intruder's termination and his arrest by the Chicago Police Department. At the conclusion of the investigation, D'or determined that it was appropriate to terminate plaintiff. D'or wrote plaintiff a letter dated October 31, 2003, terminating her effective October 23, 2003. D'or's letter stated that the reason for her termination was the October 12, 2003, incident, and that she was negligent in failing to properly challenge an unknown person who entered the building and to properly notify her supervisor or the Mega Center. The letter also discussed two prior incidents when FPS had asked GSSC to take action against plaintiff for violations of procedure, namely her removal from the 230 South Dearborn docks in April 2003 and her failure to follow Doble's orders on May 22, 2003,

6

regarding early morning access to 230 South Dearborn.

GSSC's personnel manual states that, "Neglect of duty, including sleeping while on duty, unreasonable delays or failure to carry out assigned tasks, conducting personal affairs during official time, leaving one's post without authorization, [and] failing to report for duty" may result in immediate discharge.

Plaintiff filed a grievance with the NLRB on October 31, 2003, stating that within the last six months GSSC had discriminated against plaintiff "because of her Union and or protected concerted activities." Plaintiff's NLRB charge and subsequent appeal were dismissed. Plaintiff filed a charge of discrimination against GSSC with the Equal Employment Opportunity Commission ("EEOC") on December 11, 2003, alleging race and sex discrimination, and retaliation. The EEOC issued a right to sue letter on May 27, 2004.

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

## DISCUSSION

### I. Title VII - sex and race discrimination

Counts I and II assert that GSSC discriminated against plaintiff in violation of Title VII based on her sex and race, respectively. An employee alleging either sex or race discrimination may proceed by presenting direct evidence of discriminatory intent or by using the McDonnell Douglas burden-shifting method. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Because plaintiff has not provided any direct evidence of discriminatory intent, she must establish a prima facie case of discrimination. To do so, plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) at least one similarly situated employee, not in her protected class, was treated more favorably. Wyninger v. New Venture Gear, Inc., 361 F.3d 965, 978 (7th Cir. 2004). Once plaintiff has met her burden, the employer must then produce evidence of a legitimate, non-discriminatory reason for the adverse employment action. If the employer offers such a reason, the burden then shifts back to the plaintiff to present evidence that

8

the employer's proffered reason is a pretext. Adreani v. First Colonial Bankshares Corp., 154 F.3d 389, 394 (7th Cir. 1998). At all times, the plaintiff bears the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her. Hughes v. Brown, 20 F.3d 745, 747 (7th Cir. 1994). Because the analysis is the same, the court will consider Count I and Count II together.[3]

In the instant case, GSSC argues that plaintiff has not satisfied the second and fourth prongs of the prima facie case. GSSC points to plaintiff's multiple disciplinary warnings, violations of company policy, and significant security breaches as evidence that she was not meeting her employer's legitimate expectations. Regarding the fourth prong, GSSC argues that plaintiff has failed to identify employees with a similar number of severe incidents of misconduct. GSSC's attacks on plaintiff's prima facie case appear meritorious, but the court need not reach this issue because even if plaintiff had established a prima facie case, she has failed to create a triable issue of material fact that GSSC's proffered reasons for her suspension and termination were pretextual.

A plaintiff can establish pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence. Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1039 (7th Cir. 1993). A plaintiff must demonstrate that the explanation is dishonest, rather than merely an error. Wells v. Unisource

---

[3] The court notes that plaintiff is alleging reverse discrimination. The Seventh Circuit has held that to establish a prima facie case, in addition to meeting the second, third and fourth prongs, such a plaintiff must show that "background circumstances" exist to create an inference that the employer has "reason or inclination to discriminate invidiously against whites" or evidence that "there is something 'fishy' about the facts at hand." Ballance v. City of Springfield, 424 F.3d 614, 617 (7th Cir. 2005).

Worldwide, Inc., 289 F.3d 1001, 1006 (7th Cir. 2002) (citing Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 685 (7th Cir. 2000)). A plaintiff may not, of course, avoid summary judgment merely by speculating about the defendant's motive. Rand v. CF Industries, Inc., 42 F.3d 1139, 1145-46 (7th Cir. 1994).

In the instant case, GSSC asserts that it terminated plaintiff based on the October 12, 2003, incident. Plaintiff does not argue that breaches of security do not warrant termination. See, e.g., Aguilar v. St. Anthony Hospital, 207 F. Supp. 2d 747, 760-61 (N.D.Ill. 2001) (granting summary judgment to employer in Title VII case when employee terminated for leaving door open during a security check). In fact, regarding another employee's alleged security breaches, plaintiff argues that security breaches "place the citizenry of Illinois at risk of a potential terrorist attack." Despite this concession, plaintiff asserts that GSSC's proffered reasons for suspending and ultimately terminating her based on the October 12, 2003, incident are pretextual and offered to mask GSSC's sexually discriminatory motives. Plaintiff fails, however, to contest any of the material facts regarding the October 12, 2003, incident. Plaintiff admits that she failed to challenge the intruder she observed enter the building through a door which should be accessed only by the guard on duty, that she was not certain of the intruder's identity, and that she lost video contact with him for at least ten minutes. Even by plaintiff's account, she waited at least ten minutes before contacting her supervisor, and never called the Mega Center as plaintiff concedes a guard is required to do whenever she observes a suspicious person in the building.

Plaintiff attempts to avoid summary judgment regarding her termination by raising several immaterial factual assertions and extraneous issues, along with unrelated alleged misconduct by to other employees. First, plaintiff points to Doble's testimony that GSSC was

aware that at least four employees had keys to 77 West Jackson without authorization, and that these employees were merely required to return the keys. The fact that employees other than the October 12, 2003, intruder had unauthorized keys, however, does not diminish or excuse plaintiff's failure to follow important security procedures. Second, plaintiff asserts that Moss and another lieutenant instructed her not to write a report of the incident. Plaintiff, however, admitted to GSSC's L.R. 56.1 statements of fact that both Lieutenant Crow and Doble asked plaintiff to draft a statement. Moreover, plaintiff did in fact draft a statement, which incorrectly identified the intruder as Carey. Plaintiff has thus failed to create any triable issue of material fact whether GSSC's stated reason for her termination were pretextual.

Plaintiff also argues that defendant's proffered reasons for suspending her for three days after the May 22, 2003, incident involving morning access to 230 South Dearborn were pretextual. Again, however, plaintiff does not contest the material facts underlying her suspension. She admits that she disregarded a direct order from Captain Doble not to allow anyone without a key-card into the building before 6:30 a.m., and thus concedes that GSSC's stated reason for her suspension was valid.

Again, plaintiff attempts to shift attention from her admitted misconduct by suggesting that on May 22, 2003, there was a "discrepancy" regarding the time the doors were to be opened, and arguing that she allowed people into the lobby only, rather than the building. The first argument is defeated by plaintiff's admission that she received a direct order from Doble not to open any of the doors until 6:30 a.m. Plaintiff testified that Sergeant Pruitt instructed her to allow people into the people to speak with him, but she also testified that Pruitt was not aware of the change in access hours of which Doble had informed her. In addition, Doble, who gave

11

plaintiff the direct order, is superior to Pruitt. Plaintiff's second argument, which attempts to distinguish "in the building" from "in the lobby" is nothing but unconvincing hair-splitting, and is defeated by plaintiff's testimony that she allowed people "inside the building." More importantly, plaintiff had received a direct order from her captain not to open the doors, which she concedes that she disobeyed.

The court notes that plaintiff repeatedly attempts to distract the court from the relevant issues by raising incidents that were not the basis for either the challenged suspensions or her termination. For example, she raises her write-ups for being late to work, D'or's testimony that he once saw her asleep at her post, her alleged discipline for taking time off of work to "deal with labor issues at her union," and her alleged misconduct at the 230 South Dearborn dock post. In addition, plaintiff accuses GSSC of launching a "scheme" to terminate her, which included manufacturing disciplinary documents and placing them "unseen" in her personnel file, and of launching a "mosaic of false accusations" against. Plaintiff's allegations, however, are almost entirely irrelevant to defendant's proffered reasons for its employment action and unsupported by evidence.

Plaintiff attacks the credibility of D'or's testimony that she was asleep at her post, and suggests this indicates that GSSC was in the habit of fabricating charges against her. The incident described by D'or, however, never resulted in any disciplinary action against plaintiff and has not been offered by GSSC as a reason for her termination. Plaintiff's challenge to it is therefore inapposite to her claim of pretext. In support of her claim that GSSC manufactured documents, plaintiff points to her deposition testimony that she never saw one of the tardy write-ups produced by defendant. Plaintiff, however, does not deny that she was late on the days

12

documented in the write-ups, and presents no evidence that the document was back-dated or otherwise forged.

Plaintiff's only evidence in support of her denial that she committed the misconduct alleged in the Report regarding her alleged failure to follow proper procedures at the 230 South Dearborn dock is her own testimony. To defeat a motion for summary judgment a plaintiff "must do more than challenge the judgment of his superiors through his own self-interested assertions." Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986); see also Rabinowitz v. Pena, 89 F.3d 482, 487 (7th Cir. 1996) (self-serving opinions do not create a triable issue of material fact). Plaintiff also claims that the authenticity of the Report is "in serious question," but her only evidence of a lack of authenticity is that the form was signed by GSSC only, not the FPS inspector, whose name is typed. Plaintiff does not assert that the GSSC supervisor who signed the Report did so improperly or with a discriminatory motive, or present any evidence other than her own self-serving testimony that the incident did not occur. Moreover, plaintiff does not deny that GSSC received the Report, and thus has failed to raise a triable question of fact that GSSC believed the misconduct had taken place.

Even if plaintiff's allegations were true, they are not sufficient to meet her burden of establishing pretext because neither her repeated tardiness and absences, sleeping at her post, nor the incident at the dock post were offered by GSSC as a reason for her suspension in May 2003. Only the alleged dock misconduct is mentioned in plaintiff's termination letter, and it is included as an additional justification only.

Plaintiff also asserts that she was "mysteriously" not scheduled to work after October 12, 2003, even though the schedule was made prior to the intruder incident. Plaintiff suggests this is

evidence that GSSC intended to terminate her. Plaintiff's only support for this accusation is her deposition testimony that Pruitt told her that she was listed as on vacation for the next week. Such unsupported hearsay cannot carry her burden to establish pretext. See Hughes v. Brown, 20 F.3d 745, 747 (7th Cir. 1994) (plaintiff bears the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her).

Finally, plaintiff argues that GSSC's failure to investigate whether the individuals plaintiff improperly allowed into 230 South Dearborn on May 22, 2003, had key-cards is "consistent with its plans to lay the grounds for [plaintiff's] demise." Again, plaintiff's conspiracy allegations are pure speculation and nonsensical. As defendant correctly points out, plaintiff's infraction was opening the doors at all, which Doble had instructed her not to do. In addition, there was no need conduct the investigation suggested by plaintiff because individuals with key cards would have been able to open the door themselves and proceed upstairs after signing in.

In the instant case, plaintiff has failed to present any evidence of deceit, or that GSSC's explanation for her suspensions or termination were manufactured to cover its tracks. Cf. Ryan v. Robert Bosch Corp., 2004 WL 2106608, at *6 (N.D.Ill. Sep. 20, 2004) (plaintiff presented court with more than "grand conspiracy theories" and questions about defendant's business judgment). Indeed, plaintiff has admitted to the serious misconduct proffered by GSSC as the justification for its actions. Plaintiff also fails to present any evidence that D'or, or DHS/FPS, which requested that action be taken against plaintiff, did not believe the stated reasons for plaintiff's discipline and termination. See Jordan v. Summers, 205 F.3d 337, 343 (7th Cir. 2000) ("[S]o long as [the employer] honestly believes [its proffered] reasons, pretext has not been

14

shown."). Accordingly, because plaintiff has failed to create any triable issue of material fact that her suspensions or termination were pretextual, the court grants GSSC's motion for summary judgment on Count I and Count II.

## B. Retaliation in violation of Title VII (Count IV)

Count IV alleges that plaintiff was retaliated against in violation of Title VII. Engaging in activity protected by Title VII is a required element of a prima facie case of Title VII retaliation. See, e.g., Stone v. City of Indianapolis Pub. Utils. Div., 281 F.3d 640, 642 (7th Cir. 2002). "Protected activity" must involve either opposition to an employment practice made unlawful under Title VII, or participation in a charge, investigation, or hearing under Title VII. Mattson v. Caterpillar, Inc., 359 F.3d 885, 889 (7th Cir. 2004). In the instant case, GSSC argues that plaintiff fails to establish that she was engaged in either. The court agrees.

To begin with, plaintiff's allegedly "protected activity" is a moving target because she fails to explain clearly what activity she claims is protected under Title VII. Plaintiff alleges in her complaint that she engaged in protected activity when she: (1) "complained that she had been the victim of unlawful treatment based on her race and sex"; (2) "acted as a whistle blower in bringing to the attention [of GSSC] improper practices by the ISP in wrongfully utilizing and deducting members['] dues"; and (3) "highlight[ed] breaches of federal security protocols." In her response the summary judgement motion, plaintiff states she engaged in protected activity when, "as an authorized representative of her union (ISP), has filed several charges of unfair labor practices against GSSC." Plaintiff also asserts in a different section of her brief that she reported to GSSC that she had observed another guard violate security protocols, and suggests that this constituted protected activity. Plaintiff's brief does not argue that she complained that

15

about race or sex discrimination to anyone at GSSC while she was employed.

Union activity is not protected activity under Title VII. See Spencer v. Corn Products Intern., Inc., 2003 WL 1811055, at *8 (N.D.Ill. April 7, 2003); Washington v. American Stores Co., Inc., 1999 WL 966092, ay *6 (N.D.Ill. Oct. 14, 1999) aff'd, 234 F.3d 1275 (7th Cir. 2000); Hansen v. Runyon, 1999 WL 311693, at *5 (N.D.Ill. May 13, 1999). Plaintiff presents no evidence of bringing ISP's alleged misconduct to GSSC's attention other than the union grievances attached to her complaint, which do not reference any discrimination prohibited by Title VII, including sex and race discrimination, as required to constitute activity protected under Title VII. Plaintiff cites no authority in support of the characterization of her alleged complaint about another employee's misconduct as protected under Title VII, which prohibits discrimination based on sex, race, color, religion, or national origin. 42 U.S.C. § 2000e-2.

Accordingly, plaintiff has failed to show that she engaged in protected activity as required to establish a prima facie Title VII retaliation claim. Hamner v. St. Vincent Hosp. and Health Care Ctr., Inc., 224 F.3d 701, 708 (7th Cir. 2000) (affirming summary judgment for employer when plaintiff failed to present evidence that he complained of conduct proscribed by Title VII). The court therefore grants GSSC's motion for summary judgment of Count IV.

The court declines to exercise supplemental jurisdiction over Count III, which alleges retaliatory discharge in violation of Illinois public policy[4], although it notes that this claim appears similarly thin.

---

[4]The court notes that plaintiff alleges in Count III that "Illinois and Federal law clearly mandates a public policy protection to its citizens who take actions to protect the public health and safety." As plaintiff recognizes in her response to the summary judgment motion, however, retaliatory discharge in violation of public policy is a state tort only.

## CONCLUSION

For the reasons stated above, the court grants General Security Services Corporation's motion for summary judgment. Because plaintiff failed to serve the Independent Security and Police Union within 120 days after filing her complaint on August 24, 2004, the court dismisses the ISP under Fed. R. Civ. P. 4(m), with leave to reinstate upon motion filed by plaintiff on or before December 19, 2005.

The status hearing set for December 14, 2005, at 9:00 a.m. is cancelled.

**ENTER:** **December 5, 2005**

Robert W. Gettleman
United States District Judge